## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CA, INC. d/b/a CA TECHNOLOGIES
(A BROADCOM COMPANY), a
Delaware corporation,

      Plaintiff,

vs.

DELTA AIR LINES, INC., a Delaware
Limited corporation,

      Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff CA, Inc. ("CA") hereby brings this Complaint against Delta Air Lines, Inc. ("Delta") and alleges as follows:

## INTRODUCTION

1.    This is an action for copyright infringement brought by CA against Delta arising from Delta's unauthorized use of CA's copyrighted software.

2.    In January 2023 and January 2024, CA agreed to license its copyrighted software to Delta through Order Forms that permitted use of CA's software, known as DX NetOps, on no more than a total of 33,288 Devices. Delta has flagrantly disregarded the "Authorized Use Limitations" set forth in the relevant Order Forms and used DX NetOps on approximately 48,097 Devices—14,809 Devices more than the DX NetOps licenses permitted.

3.      When Delta got caught, its excuses started. Delta claimed that its use of DX NetOps on Delta's "Pingable Devices" did not count towards its Authorized Use Limitations, even though the Specific Program Documentation for the DX NetOps software specifically required Delta to purchase licenses for its Pingable Devices (*i.e.*, devices that cannot be managed via SNMP).

4.      Delta also claimed, inexplicably, that the Specific Program Documentation for DX NetOps did not apply to its use of the software, even though the parties' master license agreement expressly states that the programs licensed to Delta (the "Licensed Programs") include such documentation. Not only was the Specific Program Documentation for the DX NetOps software publicly available on CA's website, as is customary, but CA also provided the documentation to Delta directly and emphasized the definition of "Devices" contained therein.

5.      Regardless, even using Delta's erroneous methodology to count the number of licenses needed, Delta exceeded its Authorized Use Limitations.

6.      Indeed, on information and belief, Delta exceeded its Authorized Use Limitations for copyrighted CA software even before January 1, 2023 under prior Order Forms.

7.      To make matters worse, rather than taking responsibility for its actions, Delta engaged in "race to the courthouse" forum shopping by filing a preemptive breach of contract action in a Georgia state court arising from its own wrongful

conduct. Delta's frivolous state-court lawsuit, however, ignores that its actions constitute copyright infringement, which must be adjudicated in federal court. Forcing CA to vindicate its rights under the Copyright Act in federal court while simultaneously defending against Delta's meritless state court action has needlessly caused CA to incur additional damages.

8.    CA now brings this action to vindicate its rights under the Copyright Act.

## PARTIES

9.    Plaintiff CA, Inc. is a Delaware corporation with its principal place of business in California.

10.    Defendant Delta Air Lines, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. Delta's principal office is located at 1030 Delta Blvd, Dept 982, Atlanta, GA, 30354. Delta may be served with process through its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1338 because this action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*

12.    Venue is proper in this district under 28 U.S.C. § 1400, which provides that civil actions relating to copyrights may be instituted in the district in which the

defendant or his agent may be found. Venue is proper in this district because Delta's principal place of business is in Atlanta, Georgia.

13.    This Court has personal jurisdiction over Delta because its principal place of business is in Atlanta, Georgia.

## GENERAL ALLEGATIONS

14.    CA creates and markets software solutions that enable its customers to plan, develop, manage, and secure applications and enterprise environments across different platforms.

15.    Because CA relies on its portfolio of products to distinguish it from its competitors, CA's products and technology are protected under applicable patent, copyright, and trademark laws. CA also includes confidentiality clauses in its licensing agreements.

16.    CA monetizes its products and technology through, among other things, product licensing, support, and maintenance. To protect its ability to monetize and market its products and technology, CA limits the permissible use of the products licensed under each licensing agreement.

### A.    The Master License Agreement and Order Forms

17.    In 1989, CA (then known as Computer Associates International, Inc.) and Delta entered into a master license agreement (the "Master License Agreement").

18.     The Master License Agreement provides that "[w]hen CA accepts an Order Form," Delta will have, "subject to the terms and conditions of this Agreement, a nontransferable and nonexclusive license to use the Program Product(s), optional features, if any, and related materials (collectively the 'Licensed Program') described in the Order Form(s) referencing this Agreement."

19.     By its terms, the Master License Agreement "applies to all program code, **documentation**, training materials, and enhancements embodying or related to the Licensed Program and any subsequent versions or releases of the Licensed Program which may be delivered to Licensee and **the definition of the Licensed Program includes all such** code, **documentation**, materials and enhancements" (emphasis added).

20.     Furthermore, the Master License Agreement provides that "[t]itle to the Licensed Program remains with CA, and the Licensed Program is a trade secret and the proprietary property of CA." Delta also agreed to keep the Licensed Programs "strictly confidential."

21.     CA has the express right to terminate the Master License Agreement "immediately" if "Licensee breaches any term of [the Master License Agreement] or any Order Form."

22.     Effective January 1, 2023, Delta and CA entered into an Order Form ("2023 Order Form") governed by the Master License Agreement. The 2023 Order

Form granted Delta a license to use certain Licensed Programs, including CA's DX NetOps software under the SKU DXNOP2990, for one year, through December 31, 2023, subject to specified "Authorized Use Limitations."

23.    CA's DX NetOps software delivers industry-recognized root cause analysis and large-scale assurance, along with intelligent triage workflows that enable effective and efficient management of complex, multi-vendor, traditional and software-defined networks. In a single network operations center ("NOC") portal, DX NetOps converts inventory, topology, performance, fault, flows, device configurations, log data and user experience metrics into actionable insights for fast and easy troubleshooting. On information and belief, Delta derives substantial benefit from using CA's DX NetOps software.

24.    Pursuant to the "Authorized Use Limitations" set forth in the 2023 Order Form, Delta was only authorized to use the DX NetOps software on a maximum of 9,431 "Devices."

25.    The term "Devices" is defined in the Specific Program Documentation ("Documentation") for DXNOP2990, the new SKU for the DX NetOps software licensed to Delta under the 2023 Order Form. The Documentation for DXNOP2990 was provided to Delta prior to the execution of the 2023 Order Form.

26.    The Documentation for DXNOP2990 expressly states that the software was being provided "under the following terms and conditions in addition to any

terms and conditions referenced on the CA quote, order form, statement of work, or other mutually agreed ordering document (each a 'Transaction Document') under the applicable end user agreement or governing contract (collectively, the 'Agreement') entered into by Customer and [CA] through which Customer obtained a license for the CA Software." The Documentation further provided that the "terms shall be effective from the effective date of such Transaction Document."

27.    In addition to providing the definition of "Devices," the Documentation described how "Devices" must be counted for purposes of authorized use rights and limitations in the applicable Order Form. The Documentation explained, for example, that one CA license is required for monitoring every ten "Pingable" Devices.

28.    Per the express terms of the Master License Agreement, the definition of the Licensed Program—in this case DXNOP2990—included such Documentation.

29.    In addition to the 2023 Order Form, CA also accepted an Order from Kyndryl, Inc. ("Kyndryl"), a CA partner, pursuant to which Kyndryl purchased DXNOP2990 licenses from CA for Delta's use from January 1, 2023, through December 31, 2027 ("Kyndryl Order"). Pursuant to the Kyndryl Order, Delta's DXNOP2990 licenses were subject to an Authorized Use Limitation of 23,857 Devices.

30.    On information and belief, at or around the same time, Delta entered into an agreement and Statement of Work with Kyndryl ("Kyndryl Contract"), under which it was permitted to use CA's DXNOP2990 only on 23,857 Devices pursuant to the terms and conditions set forth in the Kyndryl Order and Documentation for that software.

31.    Effective January 1, 2024, Delta and CA entered into an Order Form ("2024 Order Form"), which renewed Delta's license for DXNOP2990 through December 31, 2025. The 2024 Order Form again only authorized Delta to use DXNOP2990 on a maximum of 9,431 "Devices."

32.    Like the 2023 Order Form, the Kyndryl Order, and the Kyndryl Contract, the definition of "Devices" and method for determining use rights and limitations for DXNOP2990 was set forth in the Documentation for that software SKU. Delta was once again required to have 1 CA license for monitoring every 10 "Pingable" Devices, among other conditions and limitations.

**B. Delta's Unauthorized Use of CA's Copyrighted Software**

33.    In January 2024, a telemetry report showed that Delta had been vastly exceeding its Authorized Use Limitations for DXNOP2990.

34.    In the months following the initial telemetry report, CA made multiple requests to Delta for additional telemetry data to determine Delta's usage of DXNOP2990, but Delta refused to provide the additional telemetry data for months.

8

35.    Eventually, on June 19, 2024 and July 1, 2024, Delta provided additional telemetry data to CA. This data proved that Delta continued to over deploy DXNOP2990 through 2024. The data further revealed that Delta's over deployment of DXNOP2990 had increased after CA had informed Delta of its unauthorized use, rising to a peak of 48,097 Devices—14,809 Devices more than it was authorized to use under the 2023 Order Form, the 2024 Order Form, the Kyndryl Order, and the Kyndryl Contract.

36.    Indeed, Delta exceeded its Authorized Use Limitations even excluding the requirement that it needed 1 CA license for monitoring 10 "Pingable" Devices.

37.    On August 20, 2024, CA sent Delta a "Notice of Material Breach" letter reiterating that Delta's use of DXNOP2990 exceeded its Authorized Use Limitations and constituted copyright infringement and a material breach of the relevant agreements.

38.    Upon information and belief, Delta continues to willfully infringe CA's copyrights by deploying CA's DX NetOps software beyond the scope of the relevant license agreements and the Authorized Use Limitations set forth therein.

## FIRST CAUSE OF ACTION
### Copyright Infringement

39.    CA realleges and incorporates by reference all other allegations in this Complaint.

40.    CA is the registered owner of the valid and exclusive copyrights listed in Exhibit A of the Complaint for CA's DX NetOps software, including DXNOP2990.

41.    At all relevant times, the DX NetOps software constituted confidential business and proprietary information belonging to CA.

42.    Under the Master License Agreement, 2023 Order Form, 2024 Order Form, the Kyndryl Order, and the Kyndryl Contract (together, the "Agreements"), Delta was permitted to deploy DXNOP2990 only on an authorized number of Devices.

43.    Delta's use of DXNOP2990 exceeded the scope of the Agreements because Delta used DXNOP2990 on thousands of unauthorized Devices.

44.    As a result of the foregoing activities, Delta is liable to CA for copyright infringement under 17 U.S.C. § 501. CA has suffered and will continue to suffer losses in an amount to be proven at trial. Under 17 U.S.C. § 504(b), CA is entitled to recover its actual damages and any profits of Delta that are attributable to the infringement. In the alternative, CA is entitled to statutory damages in accordance with 17 U.S.C. § 504(c).

45.    CA is also entitled to injunctive relief prohibiting Delta's continued infringement pursuant to 17 U.S.C. § 502. CA has no adequate remedy at law for Delta's wrongful conduct because (a) CA's copyrights are unique and valuable

property, and (b) Delta's wrongful conduct and the resulting damage to CA are continuing.

46.     On information and belief, Delta's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, Delta has acted with willful blindness to, and in reckless disregard of, CA's registered copyrights.

47.     CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## JURY DEMAND

CA demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

CA requests the following relief:

1.     That process issue and that Delta be served as provided by law;

2.     An injunction requiring Delta to cease its unauthorized use of DXNOP2990;

3.     Compensatory damages, consequential, incidental, and all other damages allowed by law, including interest thereon, in an amount to be proven at trial;

4.      Actual damages and Delta's profits attributable to the infringement under 17 U.S.C. § 504(b) or, in the alternative, statutory damages under 17 U.S.C. § 504(c);

5.      Costs and reasonable attorneys' fees under 17 U.S.C. § 505; and

6.      Such other and further relief as the Court may deem just and appropriate.

[signature on following page]

Respectfully submitted this 3rd day of February, 2025.

/s/ Ashley C. Brown
Michael A. Caplan
Georgia Bar No. 601039
Ashley C. Brown
Georgia Bar No. 287373
Erin M. Victoria
Georgia Bar No. 285342
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Phone: 404.596.5600
Fax: 404.596.5604
*mcaplan@caplancobb.com*
*abrown@caplancobb.com*
*evictoria@caplancobb.com*

Alison L. Plessman *(pro hac vice application forthcoming)*
**HUESTON HENNIGAN LLP**
523 W. 6th St., Suite 400
Los Angeles, CA 90014
Phone: 213.788.4340
Fax: 888.866.4825
*aplessman@hueston.com*

*Attorneys for Plaintiff*
*CA, Inc. d/b/a CA Technologies*
*(A Broadcom Company)*